# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | No. 16-03062-02-CR-S-RK |
| **GERALD A. JONES**, | |
| Defendant. | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1.  **The Parties.**  The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Thomas M. Larson, Acting United States Attorney, and Nhan D. Nguyen, Assistant United States Attorney, and the defendant, Gerald A. Jones ("the defendant"), represented by Stacie R. Bilyeu.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2.  **Defendant's Guilty Plea**.  The defendant agrees to and hereby does plead guilty to Count One of the Superseding Indictment, charging him with a violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B), that is, conspiracy to distribute 100 grams or more of a mixture or

substance containing a detectable amount of heroin. By entering into this plea agreement, the defendant admits that he knowingly committed this offense, and is, in fact, guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which the defendant is pleading guilty are as follows:

Between October 14, 2014, and May 10, 2016, said dates being approximate, in Greene County, in the Western District of Missouri, and elsewhere, the defendant, Gerald A. JONES, knowingly and intentionally conspired and agreed with, Danny R. JONES, John W. SILLER (SILLER), Deandre D. JONES, Richard E. YARBER (YARBER), Chase T. FORTE (FORTE), Johnathan P. THRASHER (THRASHER), Zachary W. RICHMOND (RICHMOND), and others, known and unknown, to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) and (b)(1)(B).

*Overview of the Conspiracy*

Between October 14, 2014, and May 10, 2016, Gerald A. JONES came to an agreement with the other named co-defendants in the Superseding Indictment to distribute heroin in the Springfield, Missouri, area. Gerald A. JONES, Danny R. JONES, SILLER, Deandre D. JONES, and YARBER, combined their money to buy heroin from a source of supply in Chicago, Illinois. The heroin, bought from Chicago, Illinois, would then be distributed to FORTE, THRASHER, and RICHMOND, mid-level dealers, for further distribution. Gerald A. JONES personally distributed heroin in Springfield, Missouri, and made trips to Chicago, Illinois, to obtain heroin for re-distribution. Gerald A. JONES admits that the quantity of heroin attributable to him is at least 100 grams.

*Gerald A. JONES' Role in the Conspiracy*

On October 23, 2014, Springfield, Missouri Police Department (SPD) Officer Nathan Masterson responded to a call for service for room 211 at the Motel 6 located at 2655 North Glenstone Avenue in Springfield, Missouri. After clearing room 211, Officer Masterson walked passed room 201 and smelled an odor of marijuana. Officer Masterson knocked on the door, and Deandre D. JONES answered. After the door was opened, Officer Masterson saw a thick haze of smoke coming out of the room. Officer Masterson identified four males, including Gerald A. JONES and YARBER, and two females in the room.

On October 26, 2015, United States Drug Enforcement Administration (DEA) Task Force Officer (TFO) Ben Deutscher directed a confidential informant (CI) to arrange the purchase of two grams of heroin from Gerald A. JONES. The CI made a recorded telephone call to his or her source of supply at a telephone number ending in 3699, a telephone number subscribed to Gerald A. JONES. The CI's source of supply directed the CI to go to the Kum & Go gas station at 1451 North Kansas Expressway in Springfield, Missouri. At approximately 2:01 p.m., the CI's source

2

of supply arrived in a Lincoln sedan. The CI entered the Lincoln sedan, and then went into the gas station to wait for his or her source of supply to depart. TFO Deutscher watched the CI the entire time the CI was in the store. The CI then entered DEA TFO Brett Leslie's vehicle and gave approximately 1.5 grams of heroin to TFO Leslie. The CI identified the driver and the person that sold him or her the heroin as Gerald A. JONES.

On November 13, 2015, Homeland Security Investigations (HSI) Special Agent (SA) James Holdman, working in an undercover capacity, arranged for the purchase of 1 gram of heroin from FORTE at the Taco Bell Restaurant located at 1335 West Kearney Street in Springfield, Missouri. While waiting for FORTE's source of supply to arrive, SA Holdman gave FORTE $200. When FORTE's source of supply arrived in a Lincoln sedan, the driver was identified as Gerald A. JONES and the passenger as YARBER. FORTE exited SA Holdman's vehicle and entered the Lincoln. FORTE, moments later, exited the Lincoln to rejoin SA Holdman. FORTE told SA Holdman that his source of supply did not have the heroin and would have to go get it. The surveillance team followed the Lincoln to a residence on Lynn Street in Springfield, Missouri. The Lincoln, minutes later, left the residence, and returned to the Taco Bell. FORTE then exited SA Holdman's vehicle, and entered the Lincoln. When FORTE returned to SA Holdman's vehicle, he handed SA Holdman approximately 1 gram of heroin.

SA Holdman, utilizing telephone number ending in 3699, arranged for additional heroin buys from members of the drug trafficking organization. On December 2, 2015, SA Holdman arranged for, and completed, a controlled buy of 3 grams of heroin from Danny R. JONES, and on December 10, 2015, SA Holdman arranged for, and completed, a controlled buy of 3.1 from YARBER.

On December 18, 2015, SA Holdman arranged for the purchase of 3.1 grams of heroin from FORTE through Gerald A. JONES for $650. SA Holdman met FORTE at the Wal-Mart located at 1923 East Kearney Street in Springfield, Missouri. After FORTE entered SA Holdman's vehicle, FORTE made a telephone call to a telephone number ending in 3699, his source of supply, to establish a location for the buy. FORTE's source of supply stated that the buy would occur at the Pizza Hut located at 1705 West Sunshine Street in Springfield, Missouri. Surveillance was established at the Pizza Hut prior to the arrival of SA Holdman and FORTE. Minutes after their arrival, a Lincoln sedan arrived, driven by Gerald A. JONES. FORTE exited SA Holdman's vehicle and entered the Lincoln. When FORTE returned, he handed SA Holdman approximately 3.1 grams of heroin.

On January 11, 2016, SA Holdman called FORTE to arrange the purchase of heroin. SA Holdman and FORTE agreed to meet on January 14, 2016. On January 14, 2016, SA Holdman met FORTE at the Applebee's Restaurant located at 2430 North Glenstone Avenue in Springfield, Missouri. FORTE directed SA Holdman to the Taco Bell located 1335 West Kearney Street in Springfield, Missouri. While traveling to the Taco Bell, FORTE received a telephone call from his source of supply changing the buy location to the Arby's. FORTE stated that the buy will be with the "main guy" who he identified as "G." After SA Holdman and FORTE arrived at the Arby's, a Lincoln sedan arrived. TFO Deutscher, as part of the surveillance team, followed the Lincoln sedan from a residence on Lynn Street, to a Wendy's Restaurant, then to the Arby's

3

Restaurant.  FORTE exited SA Holdman's vehicle and entered the Lincoln sedan.  Minutes later, FORTE handed SA Holdman a small baggie containing 8 smaller baggies of heroin.  The heroin tested weighed approximately 2.7 grams.  DEA TFO Jason Carter followed the Lincoln to a gas station and then back to a residence on Lynn Street, where TFO Carter confirmed Gerald A. JONES as the driver.

On January 29, 2016, DEA TFO Keith Mills observed Gerald A. JONES in a Lincoln sedan at the Popeye's Chicken Restaurant located at 1421 West Kearney Street in Springfield, Missouri.  TFO Mills observed a female get out of Gerald A. JONES' Lincoln sedan and enter a Suzuki sedan.  At 1:35 p.m, the Suzuki sedan was stopped by Greene County, Missouri, Sheriff's Department Deputy Greg Tiller.  The female gave Deputy Tiller a user amount of heroin from her bra and stated that she had just purchased the heroin from Gerald A. JONES.  At 2:05 p.m., TFO Deutscher observed Gerald A. JONES, Danny R. JONES, and SILLER in a Ford Taurus at the Fast N' Friendly gas station located at the intersection of Division Street and Forest Avenue.

On March 2, 2016, DEA agents executed a federal search warrant of the residence on Lynn Street in Springfield, Missouri.  In the northwest bedroom, agents found Gerald A. JONES lying on a bed with a Greyhound bus ticket receipt.  The bus ticket receipt was for Gerald A. JONES to travel from Chicago, Illinois, to Springfield, Missouri, on February 11, 2016.  Under the mattress, TFO Deutscher found $2,541 in United States currency.  In the kitchen, inside a kitchen drawer, TFO Deutscher found approximately 51.8 grams of heroin, two digital scales, and sandwich bags.  On top of the kitchen counter, DEA SA Sean Henry found bills belonging to Gerald A. JONES.

4. **Use of Factual Admissions and Relevant Conduct.**  The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. §1B1.3(a)(2).  The defendant acknowledges, understands, and agrees that the conduct charged in any dismissed counts of the indictment, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. §1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

5. **Statutory Penalties.**  The defendant understands that, upon his plea of guilty to Count One of the Superseding Indictment, charging him with conspiracy to distribute 100 grams

or more of a mixture or substance containing a detectable amount of heroin, the minimum penalty the Court may impose is not less than five years' imprisonment, while the maximum penalty the Court may impose is not more than 40 years' imprisonment, not less than four years' supervised release, a $4 million fine, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class B felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

> a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";
>
> b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;
>
> c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of at least four years;
>
> d. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;
>
> e. any sentence of imprisonment imposed by the Court will not allow for parole;
>
> f. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and
>
> g. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea

agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to the conspiracy to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Counts Eight, Nine, and 10 of the Superseding Indictment as they pertain to the defendant at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct

6

of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

7

b. The applicable Guidelines section for the offense of conviction is U.S.S.G. §2D1.1. The parties have no agreement regarding a base offense level;

c. The parties have no agreement regarding the applicability of any enhancements applicable to the specific facts of this case and are free to object to the application of any enhancements applied in the presentence report;

d. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a 3-level reduction pursuant to §3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

e. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

g. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

h. The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that he will

make during his plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charge in the Superseding Indictment;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentence imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against him;

    e. the right to compel or subpoena witnesses to appear on his behalf; and

    f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that, by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that, if he pleads guilty, the Court may ask him questions about the offense to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands that he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

    a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement,

except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

      b.     The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16.    **<u>Financial Obligations</u>.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

      a.     The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged, related criminal activity;

      b.     The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine;

      c.     The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

      d.     Within ten (10) days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility;

e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution;

f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing;

h. The defendant certifies that he has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; or (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future; and

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered plea of guilty shall remain in effect and cannot be withdrawn.

17. **<u>Waiver of FOIA Request</u>.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that, in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than

the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys, or any other party to induce him to enter his plea of guilty.

21. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any

drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

                                         **Thomas M. Larson**
                                         Acting United States Attorney

                                By

                                         */s/ Nhan D. Nguyen*
Dated: 8/1/17                       **NHAN D. NGUYEN**
                                         Assistant United States Attorney
                                         Missouri Bar No. 56877

      I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the Superseding Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.


Dated: 8/1/17                                    */s/ Gerald A. Jones*
                                         **Gerald A. Jones**
                                         Defendant

      I am Defendant Gerald A. Jones' attorney. I have fully explained to him his rights with respect to the offense charged in the Superseding Indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Gerald A. Jones' decision to enter into this plea agreement is an informed and voluntary one.


Dated: 8/1/17                                    */s/ Stacie R. Bilyeu*
                                         **Stacie R. Bilyeu**
                                         Attorney for Defendant